UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
VERNARD ARTIS,

                Plaintiff,                      **COMPLAINT**

    -against-

CITY OF NEW YORK, and
JOHN and JANE DOES 1-5,

                                    **PLAINTIFF DEMANDS**
                Defendants.               **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff Vernard Artis, by his attorneys, the Lumer Law Group, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.      At all times hereinafter mentioned, plaintiff was an adult male and a resident of the State of New York.

        2.      At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.      At all relevant times hereinafter mentioned, defendants John and Jane Doe 1-5 (the "Doe defendants") were employed by the City of New York as members of the NYPD. The Doe defendants' identities are not presently known to plaintiff. The Doe defendants are sued herein in their individual capacity.

        4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 42 U.S.C. § 1983.

5. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Southern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

6. On July 4, 2017, during the early morning hours, plaintiff was lawfully present on West 132 Street in New York County, along with a friend, who is identified herein as JB.

7. At about the same time, there was a group of men elsewhere on the block who may have been rolling dice. Plaintiff does not know these men, was not present in their vicinity, and could not reasonably have been perceived as being with them or part of their group..

8. Some or all of the Doe defendants arrived at the scene, at which time the men down the block ran away. Plaintiff was uninvolved in the interactions between the Doe defendants and these men.

9. Sometime thereafter, plaintiff observed one or more Doe defendants engaged in conversation with JB.

10. The Doe defendants then seized, handcuffed, and arrested JB, and, at or around that same period of time, arrested plaintiff.

11. The defendants made the handcuffs overly tight, and refused plaintiff's request to loosen the handcuffs, causing plaintiff to suffer pain and discomfort in his wrists and hands for several weeks.

12. Plaintiff did not resist his arrest.

13. Plaintiff was then transported to a local area NYPD service area, where he was imprisoned for a period of hours while his arrest was processed.

14. Plaintiff was advised by an officer that he was arrested for gambling.

15. At no time was plaintiff involved in any way with any gambling that may have occurred at that location, nor was there any reasonable basis to believe that plaintiff had been engaged in any such activity.

16. At no time that night did the Doe defendants have probable cause to arrest plaintiff for any offense or crime, nor was there any reasonable basis for defendants to believe probable cause existed.

17. At no time did defendants have sufficient legal cause to arrest and imprison plaintiff, nor was it reasonable for defendants to believe such cause existed.

18. Plaintiff was later transported to Central Booking, where he was imprisoned for many more hours.

19. Upon information and belief, while plaintiff was in defendants' custody, one or more of the defendants completed, or caused to be completed, arrest paperwork in which it was falsely claimed that plaintiff engaged in criminal or unlawful conduct.

20. The arrest paperwork identified plaintiff as "Artis Bernard" and the arrest itself was assigned Arrest Number: M17640653.

21. Upon information and belief, while plaintiff was in defendants' custody, one or more of the Doe defendants forwarded, or caused to be forwarded, the arrest paperwork containing these materially and fundamentally false allegations to the New York

District Attorney's office ("NYDA").

22. Upon information and belief, one r more of the Doe defendants communicated this falsified narrative to the NYDA, in relevant part, to justify plaintiff's unlawful arrest and persuade the NYDA to commence plaintiff's criminal prosecution.

23. Upon information and belief, shortly after this information was forwarded to the NYDA, one or more of the Doe defendants spoke with the NYDA about the paperwork they had submitted, or caused to be submitted, and confirmed the fabricated narrative in order to ensure that the NYDA would initiate the prosecution.

24. The NYDA, however, declined to initiate plaintiff's prosecution, and he was eventually released from custody.

25. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

### FIRST CAUSE OF ACTION
### (42 USC 1983: False Arrest)

26. Plaintiff hereby realleges and incorporates by reference each of the preceding paragraphs as though they were fully set forth herein.

27. The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

28. Plaintiff had not been engaged in any criminal conduct, nor was he engaged in any conduct that could reasonably be viewed as criminal.

29. Despite the absence of sufficient legal cause, plaintiff was arrested and held in custody.

30. To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on the plaintiff, but failed to do so.

31. By so doing, the individual defendants subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

32. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## SECOND CAUSE OF ACTION
### (42 USC 1983: Excessive Force)

33. Plaintiff hereby realleges and incorporates by reference each of the preceding paragraphs as though they were fully set forth herein.

34. One or more of the Doe defendants employed force against plaintiff by deliberately placing him in unduly tight handcuffs, and then refusing to loosen them.

35. The amount of force employed was objectively unreasonable under the circumstances known to the defendants.

36. The force at issue caused plaintiff to suffer injuries, including, pain, numbness, swelling, and discoloration to his hands and wrists.

37. To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on the plaintiff, but failed to do so.

38. By so doing, the individual defendants subjected plaintiff to excessive force, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

39. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the loss of his constitutional rights, physical injuries, and mental anguish.

**THIRD CAUSE OF ACTION**
**(42 USC 1983: Denial of a Fair Trial)**

40. Plaintiff hereby realleges and incorporates by reference each of the preceding paragraphs as though they were fully set forth herein.

41. Upon information and belief, one or more of the Doe defendants willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiff engage in criminal or unlawful activity, and then forwarded these materially false claims to the NYDA in order to justify their arrest of plaintiff, and to justify, bring about and cause plaintiff to be deprived of his liberty and to be criminally prosecuted.

42. To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms

being visited on the plaintiff, but failed to do so.

31. By so doing, the individual defendants subjected the plaintiff to the denial of a fair trial and violation of his right to due process fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

43. By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## FOURTH CAUSE OF ACTION
## (42 USC 1983: Monell Claim)

44. Plaintiff hereby realleges and incorporates by reference each of the preceding paragraphs as though they were fully set forth herein.

45. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

46. The individual defendants' actions in this matter – necessarily condoned by and carried out with the approval of their fellow officers and supervisors – were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

47. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

48. Members of the NYPD have a demonstrated history of making

wholesale arrests in response to, and motivated by, the NYPD's insistence on quotas, which the NYPD seeks to disguise by recasting this naked demand for a monthly minimum of arrests under the term, "activity" or "activity level."

49. Member of the NYPD, including the individual defendants, were, at all relevant times herein, evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the NYPD routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

50. The NYPD generally tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, officers are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

51. More precisely, under this policy or plan, officers are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues, to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested in possession of weapons or illegal narcotics or otherwise engaged in criminal activity.

52. Upon information, this policy was in existence as of September 1, 2016, as codified in an October 17, 2011, Police Officer Performance Objectives Operation Order in

which NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

53. Upon information and belief, that same Operation Order stated, "uniformed members. . . .Who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments re-assessed."

54. In the case of *Floyd v City of New York*, 813 F. Supp. 2d 417, 448 (S.D.N.Y.) on reconsideration, 813 F. Supp. 2d 457 (S.D.N.Y. 2011), United States District Judge Shira A. Scheindlin denied the City of New York's motion for summary judgment, in part, based on evidence that the NYPD had a widespread practice of imposing illegal stop and frisk, summons, and arrest quotas on officers. The evidence cited in *Floyd*, included testimony from various officers, audio recordings of roll call meetings in which precinct commanders issued orders to produce certain numbers of arrests, stops and frisks, and summonses, and a labor grievance on behalf of six officers and one sergeant who were transferred out of the same 75 precinct where plaintiff was arrested for allegedly failing to meet a monthly ten-summons quota. In January 2006, a labor arbitrator found that this same 75 precinct had imposed summons quotas on its officers in violation of New York State labor laws.

55. In another Southern District of New York case, *Schoolcraft v. City of New York*, 10 CV 6005 (RWS), the plaintiff, a police officer assigned to Brooklyn's 81 precinct alleged that precinct commanders and supervisory personnel expressly imposed arrest and summons quotas, and explicitly directed officers to "arrest and summons fully innocent people" and then come up with a justification later.

56. In 2012, Police Officer Craig Matthews commenced *Matthews v. City of New York*, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. *See Matthews v. City of New York*, 779 F.3d 167, 169 (2d Cir. 2015).

57. That this plan is still in effect is reflected in a class action suit apparently filed in August 2015 by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month, according to a New York Times article published February 18, 2016, which can be found online at http://nyti.ms/1R9FCGu.

58. The policy or plan was kept in effect through the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

59. By maintaining such a quota system, the NYPD has created a system by which officers are sufficiently pressured to make arrests such that they will be compelled to do so even when such arrests should not be made or where there is objectively no lawful basis for such an arrest.

60. The NYPD's insistence on maintaining this system reflects a deliberate indifference to the likelihood that police officers will succumb to the pressure to make arrests, regardless of whether probable cause exists for said arrests, which will result in unjustified and unlawful arrests, such as what occurred here.

61. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**[Remainder of Page Intentionally Blank]**

WHEREFORE, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

i. actual and punitive damages against the individual defendants in amounts to be determined at trial;

ii. actual damages in an amount to be determined at trial against the City of New York;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
February 1, 2019

LUMER LAW GROUP
Attorneys for Plaintiff

Michael Lumer, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060